**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------X

In re:

                                                Chapter 7

LANCASTER MORTGAGE BANKERS,
LLC d/b/a DIRECT LENDING GROUP,         Case No. 07-22479 (MBK)


                          Debtor.
_____

PEGGY STALFORD, Chapter 7 Trustee         Adversary No. 08-1028 (MBK)
for the Debtor Estate of Lancaster Mortgage
Bankers, LLC d/b/a Direct Lending Group,

                          Plaintiff,

       -v-

LION FINANCIAL, LLC and
SPECIALIZED LOAN SERVICING, LLC,

                          Defendants.
-------------------------------------------------------X

**APPEARANCES:**

Patricia A. Staiano, Esq.
Hellring Lindeman Goldstein & Siegal LLP
One Gateway Center
Newark, NJ 07102

     -and-

Arthur M. Field, Esq.
310 Thornblade Blvd
Greer, SC 29650
Attorneys for Defendant Lion Financial, LLC

Steven Mitnick, Esq.
Mitnick & Malzberg, P.C.
P.O. Box 429
Frenchtown, NJ 08825
Attorney for Plaintiff/Trustee, Peggy Stalford

Allen Gorski, Esq.
Teich Groh
691 State Highway 33
Trenton, NJ 08617
Special Counsel for Plaintiff/Trustee, Peggy Stalford

Charles R. Jacob III, Esq.
Haynee C. Kang, Esq.
Miller & Wrubel P.C.
250 Park Avenue
New York, NY 10177
Attorneys for Defendant Specialized Loan Servicing LLC

Emmanuel J. Argentieri, Esq.
Parker McCay P.A.
Three Greentree Centre, Suite 401
7001 Lincoln Drive West
P.O. Box 974
Marlton, NJ 08053

	-and-

Frederick D. Holden, Jr., Esq.
Orrick, Herrington and Sutcliffe LLP
405 Howard Street
San Francisco, CA  94105
Attorneys for Indymac Bank FSB

**MICHAEL B. KAPLAN, U.S.B.J.**

## MEMORANDUM DECISION

This matter comes before the Court on the motion for summary judgment filed by

Defendant, Lion Financial, LLC ( "Lion") and the cross motion for summary judgment filed by Plaintiff, Peggy Stalford, Chapter 7 Trustee ( "Plaintiff" or "Trustee") for the Debtor, Lancaster Mortgage Bankers, LLC ( "Debtor" or "Lancaster").  In this adversary proceeding, Plaintiff asserts an ownership interest in certain mortgage loans originated by the Debtor, a mortgage lender, as well as the proceeds thereof. Lion contends, however, that said mortgages are not property of the estate; rather, Defendant, which purchased the subject mortgage loans from the Debtor, asserts that it is entitled to the loans and all proceeds pursuant to the terms of its pre-petition contractual agreement with the Debtor. The Court heard oral argument on May 19, 2008 and ruled in favor of Lion.[1]  This opinion supplements the Court's bench ruling.

## I.    JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984 referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(E). The statutory predicate for the relief sought herein is §§ 541, 544 of the Bankruptcy Code and Fed. R. Bankr. P. 7001.

---

[1] The Court notes that this opinion also resolves the following motions involving similarly situated defendants in adversary proceedings brought by the Trustee and which contain nearly identical issues of law:
- Adversary Proceeding 08-1211 - Motion to dismiss the Trustee's Complaint filed by Defendant U.S. Bank National Association, as Trustee for Terwin Mortgage, by its attorney-in-fact Specialized Loan Servicing, LCC for failure to state a claim pursuant to Bankruptcy Rule 7012(b) and Fed. R. Civ. Pr. 12(b)(6).
- Adversary Proceeding 08-1210 - Motion for summary judgment dismissing the Trustee's Complaint filed by Defendant Terwin Advisors, LLC, by its attorney-in-fact Specialized Loan Servicing LLC.
- Adversary Proceeding 081174 - Motion for summary judgment dismissing the Trustee's Complaint filed by Indymac Bank, F.S.B.

**II.    UNDISPUTED FACTS[2] AND PROCEDURAL HISTORY**

1   The Debtor, Lancaster Mortgage Bankers, LLC was in the business of originating and selling mortgages; indeed, it is undisputed that the Debtor originated thousands of mortgages.

2   Defendant, Lion Financial, LLC was in the business of purchasing, warehousing, servicing, and selling loans secured by first or second mortgages.

3   During the period 2004 through 2007, Lion, pursuant to a purchase agreement ("Purchase Agreement") dated August, 18, 2004, would purchase from Lancaster individual loans or bulk pools of loans on a regular basis, often as many as 30 loans per day. Lion paid for each loan in full by means of wire transfer.

4   The original promissory notes associated with each file were then stamped "Pay to the order of [blank], without recourse" by Lancaster and delivered to Lion. In the event that the original of the Note was lost, Lancaster agreed to deliver an affidavit of lost Note or similar attestation to Lion, together with a true copy of the Note.

5   Lancaster would generally execute an assignment of mortgage and in some instances the mortgage was recorded. Generally, the mortgage assignment was not recorded; however, Lion was advised by Lancaster that the property transfer would be registered with Mortgage Electronic Registration System ("MERS") by Lancaster.

---

[2] The Court notes that none of the parties have complied with L.Civ. R. 56.1 of the District Court, made applicable herein pursuant to D. N.J. LBR 1001-1, requiring the filing of separate statements of material facts as to which there exist or do not exists genuine issues. Notwithstanding, the Court has adopted and incorporated in its Memorandum Decision certain non-controverted facts set forth in the submissions of Patricia A. Staiano, Esq., Steven Mitnick, Esq., Arthur Field, Esq., Elliot S. Salzman and Haynee C. Kang, Esq. in support of their respective positions.

6  Lion would subsequently resell the loans or have such loans serviced by Specialized Loan Servicing, LLC ("Specialized").

7  The Debtor filed a petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on August 31, 2007 (the "Petition Date"). On the date of the Petition, Lion was in possession of several loan files (the "subject loans") that were not yet resold or purchased by third party investors. SLS provided the servicing on these loans. These subject loans listed in the Plaintiff's Complaint include the following:

  #1000941005  3357 Columbine Street, Denver, CO  80205

  #1001403416  67-47  73rd Place, Middle Village, NY  11379

  #1001345972  23-25 Livingston Ave., Pittsfield, MA  01201

  #1001343589  2353 Woodfield Circle, Melbourne, FL  32904

  #1001686629  9 North Rose Street, Baltimore, MD  21224

  #1002022375  210 5th Street, Newark, NJ  07107

  #1001856982  307 Prescott Street, Plainfield, NJ  07060

  <u>See</u> Movant's brief, Staiano Cert., Field Aff., ¶ 10.

8  Lion's payments for these loans are detailed in wire transfers to either IndyMac, Washington Mutual or Lancaster as follows:

  a) 3357 Columbine Street, Denver, CO 80205 second mortgage, wire to Washington Mutual on August 30, 2005, $76,000 plus interest (first mortgage wire to IndyMac on March 24, 2006, $290,812.80);

  b) 67-47 73rd Place, Middle Village, NY 11379 wire to Washington Mutual on March 31, 2006, $144,000;

  c) 23-25 Livingston Avenue, Pittsfield, MA 01201 wire to IndyMac on March 24, 2006, $297,612.19;

        d) 2353 Woodfield Circle, Melbourne, FL 32904 wire to Washington Mutual, September 23, 2005;

        e) 9 North Rose Street, Baltimore, MD 21224 wire to Washington Mutual on June 28, 2006, $112,397.87;

        f) 210 5th Street, Newark, NJ 07107 wire to IndyMac on May 30, 2006, $264,972.80;

        g) 307 Prescott Street, Plainfield, NJ 07060 wire to IndyMac on March 24, 2006, $327,964.58.

See Movant's brief, Staiano Cert., Saltzman Aff. ¶ 11.

9    Funds were wired from Lion to Lancaster in full payment of the specific loans and the loan files were transferred to Lion. See Movant's brief, Staiano Cert., Salzman Aff., ¶ 11 and December 2007 Field Aff., ¶¶ 7 and 10.

10    In addition to the above loans, Lion also paid for the second mortgage on the property held by Carlos Siguencia for the address known as 1023 Anna Street, Elizabeth, New Jersey ("Siguencia Property"). Lion provided servicing of this loan. When Siguencia eventually defaulted on the payments, Lion negotiated a settlement in which Siguencia would tender a deed in lieu of foreclosure. In turn, the Siguencia Property was deeded to Lancaster, the original holder of the mortgage, who then deeded the Siguencia Property to Lion, the assignee of the loan. However, said deed was never delivered to Lion.

11    On September 4, 2007, a Chapter 7 Trustee was appointed who initiated the instant adversary proceeding on January 10, 2008. In her complaint, the Trustee asserts that Lion cannot produce any recorded assignments of the aforesaid mortgages. Therefore, pursuant to her status as a levying judicial lien creditor as of the date of the filing of the Debtor's bankruptcy under 11 U. S. C. § 544, the Trustee argues that the Debtor is the

owner and holder of said mortgages which are still in the name of the Debtor. Additionally, the Trustee claims that she is entitled to a Deed for the property held by Carlos Siguencia for the address known as 1023 Anna Street, Elizabeth, New Jersey, which is in the name of the Debtor.

12   On April 15, 2008, Lion filed the instant motion for summary judgment, to which the Trustee cross-moved for summary judgment on May 7, 2008. Also on May 7, 2008, SLS filed a partial opposition to Lion's motion to the extent that Lion seeks relief beyond the subject loans to this adversary proceeding.

13   On May 14, 2008, Lion filed a brief in opposition to the Trustee's cross motion.

**III.   DISCUSSION**

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial." Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once the moving party establishes the absence of a genuine issue of material fact, however, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). In determining whether a factual dispute warranting trial exists, the court must view the record

evidence and the summary judgment submissions in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Issues of material fact are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result. Matsushita, 475 U.S. at 587.

In this case, all parties are in accord that there are no genuine issues of material fact and that the record before the Court is fully developed so as to permit the Court to resolve the issues on summary judgment. The central issues before the Court are whether the subject loans are property of the bankruptcy estate and, if so, whether the Trustee may use her lien avoidance powers under 11 U.S.C. § 544 to avoid Defendant's interests in these assets, inasmuch as none of the assignments of mortgage received by the Defendant were recorded in the office of the recording officer of the county in which the underlying real estate is situated. Under 11 U.S.C. § 544(a), a trustee may step into the shoes of certain hypothetical creditors in order to assert a priority position over interests in estate property, including liens, by a third party. Section 544(a) states:

> Trustee as lien creditor and as successor to certain creditors and purchasers
>
> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by -
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a). Accordingly, a trustee may use her § 544(a) avoidance powers to avoid a transfer of the debtor's property (I) when a hypothetical judicial lien creditor may do so under § 544(a)(1), (ii) when a hypothetical judgment creditor may do so under § 544(a)(2), and (iii) when a hypothetical bona fide purchaser could do so under § 544(a)(3).

The relative priorities between a Chapter 7 trustee and those asserting interests in mortgage loans originated by a debtor mortgage lender were first addressed in this District over twenty-five years ago by Judge Lipkin in In re Kennedy Mortg. Co., 17 B.R. 957, 964 (Bankr. D.N.J. 1982), in which Judge Lipkin was asked to address whether a bankruptcy trustee, as judgment creditor of the debtor mortgagee, held a superior right to the mortgages and their proceeds over an assignee of the mortgages, on ground that the assignments were unrecorded. As explained in greater detail below, Judge Lipkin ruled that the failure to record the assignment was not fatal to the right of the mortgage assignee to prevail as against parties such as a judgment creditor of the debtor; the assignee held a perfected lien on the notes by means of possession, and the mortgages were only collateral to the note. Kennedy, 17 B.R. at 965. Counsel for the Trustee herein suggests that technological changes and current upheavals in today's mortgage industry warrant a re-examination of Kennedy. The Court has so obliged, but

9

reaches the same principal conclusions as did Judge Lipkin over two decades ago.[3]

The Court's initial task is to determine whether Lion was a purchaser of the loans at issue, or whether Lion merely acted as a warehouse lender and loaned funds to Lancaster in exchange for a secured interest in certain notes and mortgages (similar to the assignee in the Kennedy case). If Lion had been acting as a warehouse lender for Lancaster, then Lion would have needed to take certain steps in order to perfect its interest in the notes. In Official Comm. of Unsecured Creditors of Investors & Lenders v. Field (In re Investors & Lenders), 165 B.R. 389, (Bankr. D.N.J. 1994), defendants made pre-petition loans to the debtor, secured by notes and mortgages held by the debtor and assigned to the defendants. In rendering his decision, Judge Stephen A. Stripp explained:

> Under N.J.S.A. § 12A:9-105(1)(I) [now § 12A:9-102(a)(47)] the notes at issue were "instruments" regardless of their negotiability, and a security interest therein must have been perfected by possession as required by N.J.S.A. § 12A:9-304(1) [now § 12A:9-312(a), which also allows perfection by filing]. Because the defendants failed to take possession of the notes they have unperfected security interests. The Committee can properly avoid

---

[3]Indeed, the Court finds Judge Lipkin's recitation below of the general workings of the mortgage industry to be on track and consistent with current practices:

> A bit of history is now in order as to the usual course of conduct of such financing by the lending banks. The financing by the so called "mortgage company," or mortgage broker, such as Kennedy, the Debtor, in this case, whereby the lending banks put up money to finance the mortgages is called "warehousing." The lenders have extended a line of credit to the mortgage company and within such limits lend money to the broker and then upon receipt of the note and unrecorded assignment of the mortgage "warehouse" the instruments for a period of time and then possibly sells them to investors in mortgages or transfers them into a pool of mortgages purchased by the Government National Mortgage Association known as "GNMA" or similar entities.

Kennedy, 17 B.R. at 958.

>these unperfected security interests under Code § 544 and,
>therefore, the Committee is entitled to judgment as a matter of law.

Official Comm. of Unsecured Creditors of Investors & Lenders, 165 B.R. at 397. Accordingly, were it acting as a lender, Lion, in order to perfect its interest in the notes at issue, would have had to either file a financing statement or take possession of said notes. With respect to the mortgage instruments that Lion acquired by means of assignment from Lancaster, it is clear that "[t]he fact that assignments of mortgages may be recorded does not affect the validity of an assignment of a mortgage which has not been recorded." Kenney, supra, 17 B.R. at 964 (citing Rose v. Rein, 116 N.J.Eq. 70, 73, 172 A. 510 (E & A 1934); Leonard v. Leonia Heights Land Company, 81 N.J.Eq. 489, 87 A. 645 (E & A 1913)). Thus, in light of the above holding in Kennedy, which applied well-established New Jersey precedent, it is axiomatic that Lion need not have recorded its assignments of mortgage in order to perfect any interests it may hold in the mortgages and maintain a superior position as to the Trustee.[4]

The foregoing discussion, albeit somewhat interesting, is also purely academic. While the issues regarding the Trustee's "strong arm" powers under § 544 would be of import if this were a warehouse loan transaction, the Court is satisfied that the relationship between Lancaster and Lion was one of seller and purchaser, respectively. Ownership of mortgage loans may be

---

[4] The Trustee cites In re Bucholz, 224 B.R. 13 (Bankr. D.N.J. 1998) for the proposition that New Jersey's recording statute, and the cases interpreting it, compel the recordation of instruments affecting title, i.e., mortgages. Bucholz dealt with a Chapter 12 debtor-**mortgagor** who sought to expunge the creditor-mortgagee's secured claim with respect to a loan collateralized by certain of the debtor's property. Inasmuch as Bucholz supports proper recordation of mortgages, however, the circumstances of the instant case are distinguishable in that Debtor is a **mortgagee** in the business of selling mortgages in the secondary mortgage market, where, as explained by the legislative history of § 541(d) more fully below, due to high volume and fast-paced sales, it may be impractical to record every assignment of a mortgage.

demonstrated by proving the transaction whereby the notes were originally acquired. See Resolution Trust Corp. v. Starkey, 41 F.3d 1018 (5th Cir. 1995). In this regard, examination of key provisions of the Purchase Agreement, whereby Lancaster established its relationship with Lion and conveyed its interests in the subject loans, mandates the inescapable conclusion that Lion acted as a purchaser, not a lender:

> Section 5. Transfer of Loan
>
> For all purposes herein, the term "loan" as in "loan purchased" shall mean the following without restriction: all right, title and interest in and to all documents, obligations, securities, collections, funds, paperwork, file, appraisals title reports, title insurance, etc., emanating from or relating to the creation of a loan by [Lancaster] or purchased by [Lancaster] from any third party originator or broker...
>
> Section 8: Blanket Assignment, Commercial Code and MERS
>
> The parties agree [Lancaster] is not lending funds to Lion, nor Lion to [Lancaster]. The relationship between them is purely one of vendor and purchaser and shall be governed by the respective provisions of the Uniform Commercial Code relating to the sale and transfer of commercial paper and promissory notes...

See Movant's brief, Staiano Cert., Exhibit C, Purchase Agreement, p. 3, 8. It is clear from the unambiguous language of the Purchase Agreement that Lion and Lancaster contemplated the sale of mortgage loans to Lion and not the lending of funds, collateralized by the notes and mortgages.

Finding that Lancaster sold the subject loans to Lion, the Court now turns to whether the bankruptcy estate retained *any* interest in said loans. In that regard, § 541(d) of the Code states the following:

> (d) Property in which the debtor holds, as of the commencement of the case, only legal title and not equitable interest, such as a

12

> mortgage secured by real property, or **an interest in such a mortgage, sold by the debtor** but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d). In the present case, the evidence clearly establishes, and the parties do not dispute, that Lancaster received payment from Lion with respect to the loans at issue. As a result of the transactions, Lion became the owner of said loans and any interest retained by Lancaster was limited strictly to complete the transfer to Lion. As the Court has explained above, it is wholly irrelevant whether Lion has recorded the mortgage assignments, as § 544 would only apply if this were a loan transaction. As the legislative history of § 541(d) explains:

> The purpose of section 541(d) as applied to the secondary mortgage market is therefore to make certain that secondary mortgage market sales as they are currently structured are not subject to challenge by bankruptcy trustees and that purchasers of mortgages will be able to obtain the mortgages or interests in mortgages which they have purchased from trustees without the trustees asserting that a sale of mortgages is a loan from the purchaser to the seller.

See Collier on Bankruptcy (15th Ed.), Volume D, Legislative History of the Bankruptcy Reform Act of 1978, 124 Cong. Rec. S 17413 (October 6, 1978). Indeed, "[s]ection 541(d)'s limitation on the scope of the bankruptcy estate prevails over the trustee's strong-arm powers under section 544 of the Code." Universal Bonding Ins. Co. v. Gittens & Sprinkle Enterprises, Inc., 960 F.2d 366, 372 fn2 (3d Cir. N.J. 1992)(citing Matter of Quality Holstein Leasing, 752 F.2d 1009, 1013 (5th Cir. 1985)("Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own"). Similarly, the evidence clearly demonstrates that a deed in lieu of

foreclosure was tendered in satisfaction of Lion's loan, as assignee, on the Siguencia Property. As such, the Court is satisfied that whatever interest Lancaster may hold in said deed is merely to effectuate the transfer to Lion. Accordingly, because the sales transactions between Lancaster and Lion fit squarely within the purview of § 541(d), the Court finds that the subject loans, as well as the Siguencia Property, are not property of the estate.

The Court also finds the Trustee's argument that § 547 allows the avoidance of assignments of mortgages executed and/or recorded during the 90 day preference period to be misplaced. Section 547(b) states:

> (b) Except as provided in subsections (c) and (I) of this section, the trustee may avoid any transfer of an interest of the debtor in property -
>
>  (1) to or for the benefit of a creditor;
>
>  (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
>  (3) made while the debtor was insolvent;
>
>  (4) made -
>   (A) on or within 90 days before the date of the filing of the petition; or
>
>   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
>  (5) that enables such creditor to receive more than such creditor would receive if -
>   (A) the case were a case under chapter 7 of this title;
>
>   (B) the transfer had not been made; and
>
>   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547 (b). As the Court has noted, the Debtor's interest in property - the loans - had

been sold to Lion as opposed to being held as collateral for a loan to Lancaster. Therefore, there was in fact no transfer of property to a creditor on account of an antecedent debt. Rather, the transactions were complete when Lion, a purchaser, transferred monies to Lancaster. Had this been a loan transaction in which it was necessary for Lion to record said mortgages to perfect its interest, then the Trustee may have a claim that the recordation and filing of a lien resulted in a transfer of the Debtor's property. However, because the Court has held that Lion need not have recorded its assignments to perfect its interests in the mortgages, that argument is unavailing. Likewise, there is no evidence to suggest that the Debtor transferred property with intent to hinder, delay or defraud any entity or that Lion failed to pay reasonably equivalent value for the loans under § 548 (fraudulent transfers). In this regard, it is undisputed that Lion wired funds to Lancaster and paid fair value for these mortgage loans[5]. Lastly, any claim under § 549 (post-petition transactions) must fail as the Court has already held that, as of the commencement of the case, the subject loans are not part of the bankruptcy estate making any post-petition transactions irrelevant.

**IV. CONCLUSION**

In light of the foregoing, the subject loans are not property of the Debtor's bankruptcy estate pursuant to § 541(d) and the Trustee may not assert an interest in the subject loans having priority over Lion. Likewise, Lion is entitled to the deed tendered in satisfaction of its loan on the Siguencia Property. Accordingly, the Defendant's motion for summary judgment is granted

---

[5]At oral argument, the Court queried of Trustee's counsel whether it would be appropriate for a trustee to recover for the estate a vehicle, **purchased in good faith for cash** by a customer of a car dealer which thereafter filed for bankruptcy, simply because the new car title remained unrecorded at the time of filing. While counsel was untroubled by this scenario, this Court cannot sanction such a result and questions whether such efforts, akin to the Trustee pursuing recovery of the subject loans, offends notions of equity and fairness.

and the Trustee's cross motion for summary judgment is denied.


Dated: June 4, 2008

_/s/ Michael B. Kaplan_
Honorable Michael B. Kaplan
United States Bankruptcy Judge